UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RUSSELL A. KINNEY III and<br>JENNIE M. KINNEY<br><br>     Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

Plaintiffs, Russell A. Kinney III and Jennie M. Kinney, (the "Kinneys") hereby bring this suit for a refund of federal income taxes that were erroneously collected and illegally retained by Defendant, the United States of America, through its agency, the Internal Revenue Service (together, the "IRS" or "Defendant") and, as the basis for this complaint (the "Complaint"), allege as follows:

## NATURE OF THIS DISPUTE

1. This action arises under the Internal Revenue Code of 1986, as amended and codified in Title 26 of the United States Code (the "Code"), for the recovery of federal income taxes erroneously collected and illegally retained by the IRS for the Kinneys' 2015 taxable year (the "2015 Tax Year").

2. The Kinneys seek recovery of $81,542 of federal income taxes that they paid for the 2015 Tax Year, plus overpayment interest on the amounts to be refunded, or such greater amount as is legally refundable.

## THE PARTIES

3. The Kinneys are husband and wife residing in the Town of Baileyville which is located in Washington County, Maine, and are citizens of the state of Maine. The Kinneys file their tax returns jointly. The Social Security Numbers are 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 and 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 for Russel A. Kinney III and Jennie M. Kinney respectively. The Kinneys' mailing address for correspondence with the IRS is 359 Houlton Road, Baileyville, ME (the "Residence").

4. The Defendant is the United States of America.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1).

6. The Kinneys timely filed their joint U.S. income tax return (IRS Form 1040) for the 2015 Tax Year on or about October 15, 2016.

7. Prior to the filing of this Complaint, the Kinneys timely paid all of their U.S. federal income tax liabilities for the 2015 tax year. *See Flora v. United States*, 362 U.S. 145 (1960).

8. The Kinneys have complied with the statutory requirements of exhausting their administrative remedies. *See* 26 U.S.C. §§ 6532, 7422. On or about April 16, 2019, the Kinneys timely filed an amended 2015 tax return seeking a refund of taxes paid (the "Refund Claim"). On May 23, 2025, the IRS sent a Letter 105C (the "Claim Disallowance Letter"), denying the Kinneys' refund claim in full. 26 U.S.C. § 6532(a)(1).

9. Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1402(a)(2).

## FACTUAL ALLEGATIONS

*The Bank of America Settlement*

10. On June 30, 2010, the Kinneys executed a mortgage with Bank of America on their principal Residence in the original amount of $69,543.00.

11. The mortgage required the Kinneys to make monthly payments of real estate taxes in escrow to Bank of America, originally calculated at $80 per month.

12. Approximately two years into the mortgage, Bank of America increased the required monthly tax payments by roughly $220, a forty percent increase in the Kinneys' monthly payments.

13. This $220 increase was due to Bank of America mistakenly including real estate taxes on a separate parcel of property that was owned by the Kinneys but not subject to the Bank of America mortgage.

14. As a direct result of Bank of America's misconduct, the Kinneys were forced into default because they could not afford these higher monthly payments.

15. Bank of America subsequently filed a foreclosure action against the Kinneys on April 20, 2013, in the Calais District Court in the State of Maine.

16. On or about January 2014, the Kinneys engaged the Molleur Law Office ("Molleur Law") and Thomas Cox ("Cox") as their attorneys to represent their interests in the Maine District Court action.

17. The Kinneys had been referred to Molleur Law due to the lack of expertise and availability among pro bono counsel in the remote Washington County area where they live.

18. On May 2, 2014, the Kinneys filed their first amended answer and counterclaims in the Maine District Court action.

19. The Kinneys' counterclaims alleged that Bank of America's conduct in demanding excessive escrow payments unlawfully violated, among other things, the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), the Maine Fair Debt Collection Practices Act ("Maine FDCPA"), Maine Consumer Credit Code ("MCCC"), and the Maine Unfair Trade Practices Act, 5 M.R.S. §§ 201 et seq. ("Maine UTPA").

20. All of these statutes contain "fee shifting" provisions which provide that if consumers prevail in their suits under these statutes, courts must order the violators of these statutes to pay the consumers' legal fees. *See* 12 U.S.C. § 2605(f)(3); 15 U.S.C. § 1692k(a)(3); 32 M.R.S. § 11054(1)(D); 9-A M.R.S. § 5-201(9); 5 M.R.S. § 213(3).

21. The Kinneys' attorneys requested these statutory fees in the First Amended Counterclaim filed in the Maine District Court action.

22. The Kinneys and Bank of America resolved the lawsuit, including the Kinneys' counterclaims, in a settlement agreement dated July 10, 2015. Under the terms of the settlement, the Taxpayers received $247,500; another $247,500 was paid directly to their attorneys at Molleur Law Office.

23. Section 1E of the settlement agreement contains precise language stating that the settlement payment was "in full satisfaction of each and every claim in the Litigation and it

includes all attorneys' fees and costs that the Kinneys may have incurred in connection with the Litigation."

24. Section 1F of the settlement agreement also releases Bank of America and the other counterclaim defendants for any claims for attorney's fees.

25. The Kinneys' Attorney Fee Agreement letter provided that if there was a recovery, the Kinneys would pay attorneys' fees for legal services equal to 50% of the net recovery.

26. The Kinneys' Attorney Fee Agreement letter provided that "Attorneys' fees paid to Attorneys under a settlement are in lieu of the Attorneys' right to seek and receive an award of statutory attorney's fees pursuant to the law."

27. The Kinneys mistakenly reported the entirety of the settlement agreement award, including the attorneys' fees, as income on their 2015 federal income tax return, and reported the attorneys' fees as a miscellaneous itemized deduction.

28. For the reasons discussed below in paragraphs 29-55, the Kinneys overreported their taxable income by $247,500 and are entitled to a refund.

## PROCEDURAL BACKGROUND AND CLAIM FOR REFUND

29. The Kinneys timely filed their joint U.S. income tax return (IRS Form 1040) for the 2015 Tax Year in October 2016.

30. On or about April 12, 2019, the Kinneys sent via certified mail their Refund Claim. According to the certified mail tracking information, this Refund Claim was received by

the IRS on April 15, 2019.  More than six months have expired since the Kinneys filed the Refund Claim.

      31.     On or around September 4, 2019, the IRS sent a letter to the Kinneys via certified mail stating that they could not process the Refund Claim and requesting the Kinneys to provide a Form 1099-C cancellation of debt form from Bank of America.

      32.     On or around October 1, 2019, the Kinneys timely responded to the September 4, 2019 letter.  The Kinneys explained that because there was no cancellation of debt, they could not provide a Form 1099-C.  This letter included copies of the amended return and Forms 2848, each listing Elizabeth J. Smith and Kathleen Saunders Gregor as authorized representatives and stating that Elizabeth J. Smith and Kathleen Saunders Gregor should receive copies of notices and communications.  Neither the Kinneys nor their undersigned counsel received a response.

      33.     On or around December 14, 2023, the Kinneys filed a Form 911 Request for Taxpayer Advocate Service Assistance as they had not received any further correspondence from the IRS.

      34.     On December 21, 2023, counsel for the Kinneys had a telephone conference with a Taxpayer Advocate Service ("TAS") representative who informed them that the IRS may have issued a Claim Disallowance Letter based on an unofficial copy she located that was stamped "COPY– DO NOT MAIL" and dated November 21, 2019.  The TAS representative informed counsel that she would engage the assistance of a technical representative to do a search of the

IRS's files to determine whether an official copy of the letter 105C was sent in compliance with the certified or registered mail requirements in 26 U.S.C. § 6532(a)(1).

35. On January 3, 2024, the TAS representative faxed counsel a copy of the unofficial Letter 105C.

36. On January 4, 2024, the TAS representative called the Kinneys' counsel and explained that neither she nor her manager could locate an official copy of the Claim Disallowance Letter in the database where they would expect to be able to do so. She further stated that a technical specialist had been assigned to the case to research whether an official copy was sent and whether the IRS had a copy of the proof of mailing. The TAS representative indicated that she expected to have an answer in February 2024.

37. On February 1, 2024, the TAS representative sent a fax to counsel providing a summary of her work on this case. The fax confirmed that the TAS representative located the Kinneys' Refund Claim and that it was timely filed on April 16, 2019. The fax also indicated that it appeared that an unofficial "COPY DO NOT MAIL" Claim Disallowance Letter had not been sent to the Kinneys via certified mail as required under 26 U.S.C. § 6532(a)(1).

38. On March 10, 2025, the IRS mailed a letter 919C which indicated that the Kinneys' refund claim could not be processed because it was filed more than three years after the original tax return.

39. On May 23, 2025, the IRS mailed a Claim Disallowance Letter which stated that the Refund Claim was disallowed because it was filed more than three years after the original tax return. The Claim Disallowance Letter stated no other reasons for denying the Kinneys' refund

claim. Thus, it did not provide an analysis regarding the underlying substance of the Kinneys' claim.

40. The IRS's assertion that the Kinneys' Refund Claim was filed more than three years after the tax return is incorrect. The Kinneys filed their original return on or around October 16, 2016. Thus, the Kinneys had until October 16, 2019, to file their refund claim. The Kinneys filed their Refund Claim on April 16, 2019, approximately five months prior to the expiration of the three-year period.

41. The Kinneys, therefore, now bring this action for recovery of $81,542 in federal income taxes, plus overpayment interest on the amounts to be refunded, or such greater amount as is legally refundable.

## **COUNT ONE**
**(Federal Income Tax Illegally Collected and Retained by Defendant)**

42. The Kinneys incorporate herein by reference and realleges all allegations in paragraphs 1–41.

43. For the reasons set forth below in paragraphs 44-55, the Kinneys are entitled to a refund of $81,542.

44. The only reason set forth for the IRS's denial in the May 23, 2025, Claim Disallowance Letter is that the Kinneys' Refund Claim is more than three years past the filing of

their original tax return and therefore untimely. The IRS's reason for the denial of the Kinneys' Refund Claim is incorrect; the Kinneys' Refund Claim was timely.

45. While the underlying substance of the Kinneys' claim was not addressed in the Claim Disallowance Letter, relevant statutes, case law, and the IRS's own publications support that the Kinneys are entitled to their refund claim.

46. Because the attorney's fees paid to Molleur Law were in the nature of statutory fees, the Kinneys had no obligation to pay the attorney's fees and the settlement payment for attorney's fees is not income to the Kinneys.

47. Where provisions are not made to allocate settlement recoveries to particular claims, Courts look to the intent of the payor and all relevant facts and circumstances of the case. *See Delaney v. Commissioner*, 99 F.3d 20, 24 (1st Cir. 1996); *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965); *Henderson v. Commissioner*, 85 T.C.M. (CCH) 1469, 3 (T.C. 2003), *aff'd*, 104 F. App'x 47 (9th Cir. 2004) (observing that courts look to the intent of the payor, based on all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation when the a settlement agreement lacks express language on what the settlement amounts were paid to settle).

48. While, the default rule under U.S. law is that each side pays its own attorney's fees whether they win or lose the lawsuit, an exception applies where there are "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975).

49. The Kinneys' counterclaims were made under the RSPA, the FDCPA, Maine FDCPA, MCCC and Maine UPTA—all of which provide for compensatory damages and

statutory attorney's fees for prevailing plaintiffs. *See* 12 U.S.C. § 2605(f)(3); 15 U.S.C. § 1692k(a)(3); 32 M.R.S. § 11054(1)(D); 9-A M.R.S. § 5-201(9); 5 M.R.S. § 213(3).

50. In *Commissioner v. Banks*, 543 U.S. 426, 437 (2005), the Supreme Court held that attorneys' fees awarded to a prevailing plaintiff were includable in the plaintiff's income and only deductible as a miscellaneous itemized deduction. However, the Court explicitly left open the question of whether such amounts would be includable where there is an "indication in [the litigant's] contract with his attorney, or in the settlement agreement with the defendant, that the contingent fee paid to [the litigant's] attorney was in lieu of statutory fees [the litigant] might otherwise have been entitled to recover." 543 U.S. 426, 437-439 (2005).

51. Since the *Banks* decision, the IRS has taken the position that the portion of a settlement providing for statutory fees and costs to a plaintiff's attorney is excluded from the plaintiff's income. *See* PLR 201552001; PLR 201015016.

52. In PLR 201552001, the IRS determined that attorneys' fees were not taxable as income since the taxpayer "had no obligation to pay the attorneys' fees." In making this determination, the IRS observed that the client's retainer agreement provided that the client would not be charged for legal work and that the settlement agreement had a statutory fee-shifting claim requiring the defendant to pay attorney's fees and costs. Similarly, in PLR 201015016, the IRS concluded that attorneys' fees paid from an amount collected under an award of statutory fees should be excluded from the taxpayer's income.

53. The facts in the Kinneys' case fit squarely within the open question posed by the Court in *Banks* and the IRS's own PLRs. The Settlement Agreement and Release affirms that the payment was in full satisfaction of all claims in the litigation and includes all attorneys' fees and costs. The Attorney Fee Agreement Letter with Molleur Law has precise language that

10

attorneys' fees paid under a settlement would be in lieu of the Attorney's right to receive an award of statutory attorneys' fees and no payment would be required in the absence of recovery.

54. Additionally, excluding the attorney's fees paid to Molleur Law from the Kinneys' income comports with Congress's intent and purpose of fee-shifting statutes. *Venegas v. Mitchell*, 495 U.S. 82, 86 110 (1990) (observing statutory fees enable "plaintiffs to employ reasonable competent lawyers without cost to themselves if they prevail."); *see also Spooner v. EEN, Inc.*, 644 F.3d 62, 69 (1st. Cir. 2011); *cf. Archambault v. GC Services Limited P'ship*, No. 2:15-cv-00104-JAW, 2016 WL 6208395 at *4-*5 (D. Me. Oct. 24, 2016) (highlighting policy rationale in finding proportionality requirement does not apply to claims under the FDCA and Maine FDCPA).

55. Accordingly, as the Kinneys reported the entirety of the settlement agreement award, including the attorneys' fees, as income on their 2015 federal income tax return, and reported the attorneys' fees as a miscellaneous itemized deduction, they are therefore entitled to a refund.

## PRAYER FOR RELIEF

WHEREFORE, the Kinneys respectfully request the following relief:

1. On the claim for relief in Count One, judgment in favor of the Kinneys against the IRS in the amount of $ $81,542 or such greater amount as the Court determines to be legally refundable, plus overpayment interest thereon as provided by law;

2. The Kinneys' attorneys' fees, expenses, costs, and such other and further relief as this Court deems appropriate.

Respectfully submitted this 4 day of March, 2026.

/s/ Thomas A. Cox, Me. Bar No. 1248
P.O. Box 1083
Yarmouth, ME 04096
(207) 479-6671
tacsail@icloud.com

Kathleen Saunders Gregor*
Keziah Dutchak-Leonard*
Elizabeth Smith*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
kat.gregor@skadden.com
keziah.dutchak-leonard@skadden.com
elizabeth.smith@skadden.com

Sanessa Griffiths*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000
sanessa.griffiths@skadden.com

*Attorneys for Plaintiffs*
*Russell A. Kinney III and Jennie M. Kinney*

*Pro hac vice application forthcoming.